IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORRINDA SPAULDING, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 05 C 6311 |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Corrinda Spaulding brought this action against Jo Anne Barnhart, Commissioner of Social Security, as an appeal to her partially successful claim for social security benefits. Claimant originally filed for Disability Insurance Benefits ("DIB") on October 9, 1996, alleging disability from a hiatal hernia, gastroesophageal reflux, chronic dyspepsia and erosive gastritis, claiming disability from December 16, 1993. After a series of administrative hearings and appeals, plaintiff once again appeals to this court for reversal of the Commissioner's partial grant of benefits. Before us today is plaintiff's motion for summary judgment, requesting reversal of the Commissioner's disability determination and remand, with instruction to award benefits to plaintiff. Alternatively, plaintiff requests that we remand this case to the Commissioner for additional proceedings. In recognition of the Administrative Law Judge's ("ALJ") failure to resolve all material factual issues of plaintiff's claim for disability benefits, the Commissioner agrees that plaintiff's case should be remanded for further proceedings, but opposes an outright reversal of the Commissioner's decision. Thus, the only question at issue is whether plaintiff's case should be remanded to the Commissioner for

further administrative proceedings, or remanded to the Commissioner with an instruction to award benefits. For the reasons stated herein, we grant in part plaintiff's motion for summary judgment and remand her case to the Commissioner for further proceedings consistent with this order.

## BACKGROUND

Plaintiff's claim for benefits has been pending for almost 11 years, having originally been filed on September 11, 1996. Following an administrative hearing, ALJ James Horn denied plaintiff's claim on June 26, 1998. The Appeals Council denied plaintiff's request for review and plaintiff appealed to the federal district court. After this court affirmed the ALJ's finding, plaintiff appealed to the Seventh Circuit. On March 28, 2001, the Court of Appeals found that the ALJ's decision contained factual errors, did not consider relevant evidence, and failed to build a logical bridge between the evidence and the results. Consequently, it remanded the case back to the Commissioner for further proceedings. Thereafter, on November 4, 2002, ALJ Horn held a supplemental hearing with testimony from medical and vocational experts, and, on April 25, 2003, again denied plaintiff's claim. Plaintiff again appealed to this court, where, on November 10, 2004, we remanded the case back to the Commissioner for further administrative proceedings. That remand resulted in a third administrative hearing, this time before ALJ John Kraybill, with the same vocational expert from the second hearing and a new medical expert. ALJ Kraybill determined that plaintiff was not disabled during the relevant period for DIB, but was disabled as of April 27, 2004. This appeal followed.

Plaintiff has long suffered from a variety of gastrointestinal disorders. She has been diagnosed with a hiatal hernia, erosive gastritis, chronic dyspepsia, and gastroesophageal reflux (Admin. Rec. 22, 79, 80, 83, 97). During the course of her medical treatment, she reported the

following symptoms: vomiting, headaches, nausea, bowel irregularity (alternating between diarrhea and constipation), headaches, and dry heaves (over a 30-60 minute period) (*id.*, at 79, 88, 108, 109, 110). In an analysis with respect to plaintiff's claim for benefits, Dr. Colligan, her treating physician from 1988 to 1992, and again after 1996, indicated that employment- related stress caused plaintiff's gastrointestinal symptoms to "become intolerable," and plaintiff should neither bend over nor lift objects greater than 20 pounds (*id.*, at 100-01). Prescriptions for Reglan and Zantac sporadically worked to decrease her symptoms, but plaintiff testified that the medications, particularly the Reglan, produced side effects such as exhaustion (*id.*, at 144).

On March 3, 1998, accompanied by an attorney, plaintiff testified at her first administrative hearing before ALJ Horn. Plaintiff answered questions about her work and medical history, and her symptoms and activities. Neither a medical nor vocational expert testified. Plaintiff testified that she experienced dehydration, vomiting, dry heaves, malnutrition, abdominal pain, diarrhea, and constipation. She testified that her gastrointestinal problems made her dehydrated, dizzy and disoriented, lightheaded, gave her headaches, and required a significant amount of sleep. She testified that her nausea was constant and her vomiting was "persistent and unpredictable" (Admin. Rec. 147). Plaintiff also noted that her abdominal pain, worsened by bending over and/or vomiting, caused spasms and hot flashes (*id.*, at 148). Plaintiff's work history showed that she had held ten jobs over an eleven year period (*id.*, at 55). She indicated, with respect to her condition when she was working: "I tried to change all the scenarios trying to see what maybe I could do, maybe it might not be facing customers, or, or I tried, you know. Working in factories. I tried to change the shifts to see if maybe it was the hours of the day. You know, anything to try to make it better. You know, whether it was the stress working with money or whether it was – I tried to,

you know, everything I could to work around, you know, my condition and, and nothing seemed to work..." (*id.*, at 141). Plaintiff testified that she would either get fired, or walk away with the knowledge that she would soon be fired (*id.*).

Under Title II of the Social Security Act, an individual is considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An "individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. §§ 423(d)(2)(1); 1382c(a)(3)(B). In order to determine whether an individual is "disabled," the Commissioner must undertake a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. The steps must be taken in order, and a finding that claimant is not disabled at any time ends the inquiry. <u>Greenwood v. Barnhart</u>, 433 F.Supp.2d 915, 924-25 (N.D.Ill.2006). "Under this process, the ALJ must inquire: (1) whether the claimant is still working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) if the claimant does not suffer from a listed impairment, whether he can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Id.*, at 925. *See also* <u>Young v. Barnhart</u>, 362 F.3d 995, 1000 (7th Cir.2004). ALJ Horn proceeded through the required steps, ultimately finding that plaintiff could perform her past relevant work as a bank teller, and thus was not disabled. The ALJ discussed plaintiff's medical history, including notes from her

treating physicians and a state agency non-examining physician. Ultimately, he determined that "[t]he evidence as a whole fails to establish that the claimant has any limitations which would serve to further narrow her residual functional capacity." (Admin. Rec. 14).

Plaintiff appealed ALJ Horn's determination to this court, where we affirmed the denial of benefits. Plaintiff's appeal to the Seventh Circuit, however, yielded different results, and her case was remanded to the Commissioner for further administrative proceedings. On March 28, 2001, the Seventh Circuit set forth plaintiff's medical and work history, along with the ALJ's determination, and found that "the ALJ's reliance on numerous factual errors, his failure to consider relevant lines of evidence, and his failure to build a logical bridge between the evidence and the result, preclude meaningful appellate review." (Admin. Rec. 130) (internal citations omitted). Specifically, the Seventh Circuit chastised the ALJ for failing to consider Dr. Colligan's opinion and plaintiff's testimony that she should not bend over, mischaracterizing plaintiff's testimony as to the frequency of her vomiting episodes, failing to account for plaintiff's spotty work history, and failing to build a logical bridge to his conclusion that the evidence did not support a finding that without proper follow-up and medication, plaintiff would not be able to work. Additionally, the Seventh Circuit criticized the ALJ's failure to explain his credibility determination, and remanded, with the following guidance: "On remand the ALJ must consider the full range of medical evidence, with due regard for Dr. Colligan's opinions, and conduct a reevaluation of Spaulding's testimony," in addition to summoning medical and vocational experts to acquire additional information. (*Id.*, at 133).

Thereafter, on November 4, 2002, ALJ Horn held another administrative hearing. Plaintiff and her counsel relied primarily on plaintiff's testimony in the prior hearing, but plaintiff did testify that her symptoms had gotten worse and that she also suffered from

depression and hormone irregularity. The hearing primarily consisted of testimony from Dr. Walter Miller, the medical expert, and James Breen, the vocational expert. Dr. Miller's testimony was contradictory and confusing. For example, he stated that plaintiff had "received symptomatic treatment all these years without any actual physical pathological diagnosis" (Admin. Rec. 314), but also noted that her medical records showed evidence and/or diagnoses of gastric erosion, duodenal erosions, a hiatal hernia, gastritis, and gastroesophageal reflux (*id.*, at 313, 315, 320, 321). Dr. Miller also noted that plaintiff would have no restrictions on stooping, kneeling, or crouching (*id.*, at 317), and discounted plaintiff's earlier testimony of her inability to bend over, and Dr. Colligan's assertion of the same, as having "no diagnosis in the records to substantiate that." (*Id.*, at 318). In Mr. Breen's testimony, he categorized plaintiff's previous jobs as to exertion and skill level. He indicated that "[m]ost employers would not allow somebody to miss more than two to three days a month" *id.*, at 330), and that it would be hard to believe that an employer would allow an employee to take a 30-minute unscheduled break three times a week (*id.*, at 332).

On April 25, 2003, ALJ Horn issued his second determination that plaintiff was not disabled, again finding that plaintiff could perform her past relevant work as a bank teller or a payroll clerk. He relied on the medical testimony of Dr. Miller, specifically indicating the doctor's determination that "the claimant's complaints of symptoms have persisted without any anatomical or pathological basis for her complaints." (Admin. Rec. 160). The ALJ also relied on Dr. Miller's findings that plaintiff's inability to bend over was unsupported by the medical records and that there was no medical basis for a finding that plaintiff could not perform a full range of light work. Additionally, the ALJ made a credibility determination as to plaintiff's testimony. Citing the lack of evidence of weight fluctuations in the record, lack of a medical test

showing a severe debilitating disorder, and plaintiff's past success with prescribed or over-the-counter medication, he found that "the evidence simply does not support the claimant's subjective complaints." (*Id.*, at 164). The ALJ did not explicitly rely on Mr. Breen's testimony in his written decision.

Plaintiff again appealed the Commissioner's decision to adopt ALJ Horn's determination. On May 12, 2004, this court reversed the Commissioner's decision. We faulted the ALJ for failing to discuss plaintiff's non-exertional limitations as required under SSR 96-8p, and his jump from a finding that plaintiff's testimony was not credible to the conclusion that she could perform her past relevant work. In noting that the ALJ failed to explain the severity of plaintiff's symptoms, we asked: "Does she suffer from regular bouts of vomiting, nausea, and diarrhea? If so, how frequently? Often enough to cause her to take two sick days a month or three unscheduled breaks a week?" (Admin. Rec., at 407).We also faulted the ALJ for relying on Dr. Miller's misconceived and inaccurate testimony, especially in lieu of reliance on plaintiff's treating physicians, without sufficient explanation as to why. At that time, plaintiff implored this court to remand for the award of benefits, but we declined, finding that while the ALJ's decision contained errors that precluded meaningful review, his opinion did show a concern for the issues raised by the Seventh Circuit, and thus, was not appropriate for an outright reversal.

On July 27, 2005, plaintiff had a third administrative hearing before ALJ John Kraybill. He questioned plaintiff, who indicated that her diarrhea and vomiting episodes had gotten worse – on a good day she would need to use the restroom five to eight times, on a bad day, twelve to fifteen times. She testified that she slept in an angled position, her medication made her drowsy, she needed to wear protective undergarments, and she needed significant help to

care for her children.[1] Thereafter, the ALJ heard testimony from the medical expert, Dr. Carl Leigh. Dr. Leigh indicated that plaintiff had been diagnosed with erosive gastritis, duodenitis, irritable bowel syndrome (spastic colon), a variation of inflammatory bowel disease, presence of helicobacter pylori, gastroparesis, a hiatal hernia, and gastroesophageal reflux disease. (Admin. Rec. 375-76). Dr. Leigh indicated that plaintiff would need access to a toilet more often than during scheduled breaks, and bending over should be restricted to occasional (*id.*, at 377-78). Vocational expert James Breen testified again. He classified plaintiff's past employment according to exertion and skill level. Considering plaintiff's need to access the restrooms on an unscheduled basis, and for extended times, Breen's testimony was contradictory. He alternatively found that need for unscheduled restroom breaks would make a person nearly unemployable (*id.*, at 384) and employable (*id.*). Although the ALJ did not try to pin down the exact number or length of breaks plaintiff might take, Mr. Breen made contradictory statements as to the number of breaks that would generally be allowed. In the same answer, he noted that "four breaks throughout a day is unheard of because you're going to get a morning break, ... your lunch break and an afternoon break" and "[o]ne extra break a day isn't going to make somebody unemployable." (*Id.*, at 386).

On September 16, 2005, almost exactly nine years after plaintiff originally filed for DIB benefits, ALJ Kraybill denied plaintiff her DIB benefits, finding that she could have performed her past work as a payroll clerk and film developer prior to April 2004. Although the ALJ

---

[1] The July 27, 2005, hearing consolidated plaintiff's DIB appeal with a hearing for SSI benefits filed on May 24, 2004. Because of the SSI application, the ALJ elicited testimony regarding plaintiff's health and activities in recent years – years that are irrelevant to the DIB application, which was specifically concerned with finding a disability as of December 31, 1998.

failed to make the necessary credibility determinations,[2] he credited Dr. Leigh's testimony and found that "considering the claimant's residual functional capacity for light work with four to five scheduled restroom breaks, the claimant was able to perform her past relevant work as a payroll clerk and film developer, until April 2004, and she was not disabled, under the Act[20 CFR 404.1520[f]]." (*Id.*).

We finally come to the case before us today – plaintiff's appeal of ALJ Kraybill's determination, since adopted by the Commissioner. Her argument centers on two connected complaints. First, plaintiff asserts that the expert testimony does not support the ALJ's decision. Specifically, plaintiff contends that the ALJ's determination with respect to the number and length of bathroom breaks plaintiff would need during a weekday was unsupported by any evidence in the record. Second, plaintiff asserts that the ALJ's credibility determination is insufficient as a matter of law. Plaintiff's second argument stems from her complaint that the ALJ never made a credibility determination with respect to plaintiff's testimony of her symptoms and pain prior to April 2004. Such a failure, plaintiff contends, violates SSR 96-7p, and therefore requires reversal.

Plaintiff's arguments are interconnected. The medical testimony does not clearly evidence a specific number or length of bathroom breaks plaintiff would have required in 1998. The only evidence of the number or length of plaintiff's bathroom breaks comes from plaintiff's testimony, a notation in the medical records from 1992 and one from 2002, and the medical expert's indication that plaintiff's testimony was not inconsistent with the medical records. Thus, plaintiff must rely on her own testimony to establish the number and length of the

---

[2]ALJ Kraybill found credible plaintiff's testimony as to her symptoms since April 2004, but did not make a credibility determination for purposes of plaintiff's DIB application.

bathroom breaks she would have required in 1998. That brings us to the credibility determination. Because the ALJ does not have to believe Ms. Spaulding (Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir.1996)), and, in fact, must determine where the truth lies during the administrative hearing (Rogers v. Barnhart, 446 F.Supp.2d 828, 834 (N.D.Ill.2006)), the ALJ's determination of plaintiff's credibility is at the heart of this appeal.

## DISCUSSION

Where, as here, the Appeals Council denies a request for further review, the ALJ's findings constitute a final decision. 20 C.F.R. § 404.981; Herron v. Shalala, 19 F.3d 329, 332-33 (7th Cir.1994). Such a decision deserves substantial deference, and we may not "decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the [Commissioner]." Herron, 19 F.3d at 333. *See also* Young, 362 F.3d at 1001. While we may affirm, modify or reverse the Commissioner's determination with or without remanding for a rehearing, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). *See also* Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir.2003) ("We will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law").

Both parties agree that the ALJ did not fulfill his obligation to fully develop a factual record. Further, we note that he failed to follow the strictures of the Social Security Rulings by failing to make a credibility determination of plaintiff's symptoms and pain prior to April 2004. *See* SSR 96-7p. As the ALJ neglected to make any credibility determination, it is clear that he failed to "'build an accurate and logical bridge between the evidence and the result,'" Ribaudo v. Barnhart, 458 F.3d 580, 584 (7th Cir.2006) (citing Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir.2000)).

As we agree with both parties that the ALJ did not fulfill his obligations, the question before us is: what is the remedy? Plaintiff encourages us to remand with instructions to award benefits. In support of her argument, plaintiff asserts that the record yields but one supportable conclusion and that, therefore, remand for additional proceedings is unnecessary. Defendant, not surprisingly, disagrees. The Commissioner requests a remand for further administrative proceedings. She argues that because the ALJ failed to resolve all of the factual issues, this case is not ripe for determination. Therefore, the Commissioner argues that an award of benefits is inappropriate at this stage.

At the outset, we note that plaintiff has been fighting this fight for more than a decade, from the administrative hearing room to our courtroom to the Seventh Circuit and back again several times. While we acknowledge that such a path must have caused plaintiff frustration, all parties recognize that delay and administrative obduracy is insufficient in itself to allow us to award plaintiff benefits. Briscoe *ex rel.* Taylor v. Barnhart, 425 F.3d 345, 357 (7th Cir.2005) ("Obduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability"). It is only when "all factual issues have been resolved and the 'record can yield but one supportable conclusion'" that an award of benefits is appropriate. *Id.*, at 355 (citing Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir.1993)).

As noted above, plaintiff asserts that there is only one supportable conclusion, that she is disabled and unable to sustain work. Plaintiff points to the following "evidence": (1) plaintiff needed more than 4-5 bathroom breaks in a given work day; (2) plaintiff's bathroom breaks would have lasted from ten minutes to an hour; and (3) one who needed 30 to 45 minute breaks during a workday, or one unscheduled 30 minute break several times a week, would be unemployable. In support of the first statement plaintiff points to her testimony and Dr.

White's 2002 notation that she was having frequent bowel movements of 5 to 8 per day, with occasional vomiting (Admin. Rec. 476). In support of the second statement, plaintiff points to her testimony that she needed to spend anywhere from 10 minutes to an hour in the bathroom before she could once again go about her business (*id.*, at 366), and Dr. Leigh's negative answer to the question of whether plaintiff's testimony about her need to take extended bathroom breaks was inconsistent with her medical conditions (*id.*, at 379). Finally, in support of the third statement, plaintiff points to the vocational expert's testimony that he would consider a person who had to take 30- to 45-minute breaks unemployable (*id.*, at 389).

Based on such evidence, plaintiff asserts: "What is clear on this record is that if, as Ms. Spaulding stated, her breaks often took thirty minutes or more, the vocational expert's testimony was unequivocal – that all employment would be precluded" (plf's brief at 13). And, because Dr. Leigh stated that plaintiff's testimony of her need for extended bathroom breaks was consistent with the medical records, and the ALJ did not make a negative credibility determination, plaintiff implies that we should accept her testimony as credible. Unfortunately for plaintiff, that jump is too large for us to make on this record. The question of credibility remains unanswered in this case.[3] And while we are dismayed by the ALJ's failure to make such a determination, we are in no position to make it for him.[4] In assessing an ALJ's credibility determination, the Seventh Circuit has stated that "while we must defer to an ALJ's

---

[3] In fact, in his closing statement in front of ALJ Kraybill, plaintiff's attorney recognized that the disability determination would hinge on a credibility determination. (Admin. Rec. 389-90) ("I mean, I understand, you know, there's a credibility, in my opinion a credibility determination here to be made, which is what this back and forth was about").

[4] ALJ Kraybill failed to follow the order of the Seventh Circuit regarding credibility. (*See* Admin. Rec. 183) ("Perhaps, as the Commissioner argues in his brief, the ALJ considered Spaulding's complaints regarding her various medical ailments but did not find those complaints to be credible. If the ALJ disbelieved Spaulding's testimony, however, he was required to say so in his opinion and give reasons why.")

credibility assessment of a witness (unless it is patently wrong), we must first be certain that a credibility determination has actually been made." Schroeter v. Sullivan, 977 F.2d 391, 394-95 (7th Cir.1992) (internal citations omitted). In Schroeter, the Court of Appeals, in reviewing a record wherein the ALJ failed to make a relevant credibility determination, remanded the case to the ALJ for further proceedings. *Id.*, (specifically rejecting the magistrate's suggestion of remanding for benefits). *See also* Schwabe v. Barnhart, 338 F.Supp.2d 941, 955-56 (E.D.Wis.2004) (ALJ's failure to make relevant credibility determinations was cause for remand for further proceedings); Khan v. Chater, 1997 WL 669764, *5 (N.D.Ill.1997) (same).[5]

Therefore, we remand the case to the ALJ so that he may make a well-reasoned and thoughtful credibility determination. *See* Ribaudo, 458 F.3d at 584: SSR 96-7p. The ALJ must specifically articulate his reasons for believing or not believing Spaulding's testimony as to her need for additional, extended, and unscheduled bathroom breaks. Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir.2004) (claimant's credibility must be considered "in light of 'the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record'") (citing SSR 96-7p). In making such a determination, the ALJ must follow the guidelines of the Social Security Rulings and the guidance set forth in this opinion and the prior opinions in this case. Additionally, as this case

---

[5]Plaintiff cites to a number of cases to argue that the ALJ's failure to make a credibility determination requires reversal. In all of those cases, however, the Seventh Circuit, while addressing the problems with ALJs' failures to make credibility determinations, remanded the case to the Commissioner for further proceedings. *See* Indoranto v. Barnhart, 374 F.3d 470 (7th Cir.2004); Lopez, 336 F.3d at 540; Golembiewski v. Barnhart, 322 F.3d 912 (7th Cir.2003); Brindisi o/b/o Brindisi v. Barnhart, 315 F.3d 783 (7th Cir.2003); Steel v. Barnhart, 290 F.3d 936 (7th Cir.2002); Zurawski v. Halter, 245 F.3d 881 (7th Cir.2001). Therefore, none of plaintiff's cited cases is helpful for her argument that benefits should be awarded at this stage.

refers back to decade-old symptoms and treatments, the ALJ must give serious consideration to plaintiff's treating physicians. Micus v. Bowen, 979 F.2d 602, 608 (7th Cir. 1992) ("Whereas scores of doctors may examine a claimant's present condition, going back in time to examine the claimant's past condition is difficult for even the most talented consulting physicians. In such a case, the ALJ must take into account the treating physician's ability to observe the patient") (internal citations omitted). If the ALJ is unable to articulate specific reasons, drawn from the medical records and expert testimony, for any disbelief of plaintiff's testimony, he must award Spaulding the relief she requests because, if she needed 4 or 5 or more unscheduled bathroom breaks lasting up to an hour or required more than 2 or 3 sick days per month, she would have been unemployable.[6]

Although the crux of this disability determination appears to hinge on the number and length of bathroom breaks plaintiff would have needed in 1998, the ALJ must "take into consideration all of the evidence in the record and discuss significant evidence contrary to his ruling." Hampton v. Massanari, 171 F.Supp.2d 791, 795 (N.D.Ill.2001) (citing Godbey v. Apfel, 238 F.3d 803 (7th Cir.2000)). In this case, that means assessing the previous testimony of plaintiff and medical and vocational experts, all of the medical records, evidence of plaintiff's symptoms, her diagnoses, and evidence of plaintiff's headaches and weakness that ensued after her episodes of vomiting and diarrhea. The ALJ's failure to provide a full and fair credibility determination and assessment of the entire record will lead to the grant of plaintiff's benefits. See Spaulding v. Barnhart, 2006 WL 2524132 (N.D.Ill.2006) ("Perhaps at some point the agency

---

[6] This finding comes straight from the vocational expert's testimony (see Admin. Rec. 330) ("Most employers would not allow somebody to miss more than two to three days a month") id., at 332 (finding it hard to believe that any employer would allow an employee to take a 30-minute unscheduled break once a day every day or three times a week); Id., at 387 (testifying that most employers would not allow an employee to take unscheduled breaks four times a day); Id., at 389 (considering a person who would need 30-45 minute breaks unemployable).

abdicates its authority to make the determination and surrenders that authority to the court...").

## CONCLUSION

For the reasons stated herein, we remand this case to the Commissioner for further proceedings consistent with this order.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 2, 2007.